UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

PETERSON MOTORCARS, LLC and
DAVID PETERSON,                                                                      Plaintiffs,

v.                                                              Civil Action No. 3:19-cv-277-DJH-RSE

BMW OF NORTH AMERICA, LLC,                                                 Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiffs Peterson Motorcars, LLC and David Peterson assert various claims against Defendant BMW of North America, LLC pertaining to a dealership agreement between BMW and Peterson Motorcars. (*See* Docket No. 6) BMW initially filed a partial motion to dismiss and an answer (D.N. 15; D.N. 16); it then moved for leave to file an amended answer to assert a counterclaim. (D.N. 33) After the Court granted BMW's motion for partial dismissal (D.N. 43), Plaintiffs moved for leave to amend their complaint to correct deficiencies identified in the dismissal order. (D.N. 48) For the reasons set forth below, the Court will deny Plaintiffs' motion and grant BMW's motion.

**I.**

Peterson Motorcars and BMW entered into a dealership agreement under which Peterson Motorcars would construct and operate a stand-alone MINI-brand dealership. (D.N. 6, PageID # 115; D.N. 16, PageID # 255-56) The breakdown of that relationship led Plaintiffs to file this action. (D.N. 6, PageID # 122) BMW responded by filing an answer and moving to dismiss several of Plaintiffs' claims. (*See* D.N. 15)

On October 21, 2019, before the Court ruled on the motion to dismiss, BMW moved to amend its answer to add a counterclaim for abuse of process. (D.N. 33, PageID # 862; D.N. 33-1,

1

PageID # 883) The proposed counterclaim alleges that Plaintiffs threatened legal action if BMW refused to pay the remaining $3.1 million debt owed for construction of the MINI dealership. (D.N. 33-1, PageID # 882) Plaintiffs opposed BMW's motion, arguing that the amendment would be futile. (D.N. 36, PageID # 902) In Plaintiffs' view, BMW failed to state a claim for abuse of process because the remaining debt owed for construction of the MINI dealership is a viable remedy for their claim. (*Id.*, PageID # 905)

On January 9, 2020, the magistrate judge issued a scheduling order that set February 28, 2020, as the deadline to file any additional "motion to amend pleadings or motion to join additional parties." (D.N. 39, PageID # 938) On February 19, 2020, the Court granted BMW's motion to dismiss Counts IV and V in their entirety and Counts I, II, and VI as to Plaintiff David Peterson. (D.N. 43, PageID # 950) Most relevant to the current motions, the Court's order dismissed Plaintiffs' claim in Count V that BMW had violated the Kentucky Motor Vehicle Sales Act, Ky. Rev. Stat. § 190.070(3). (*Id.*) This claim alleged that BMW violated the KMVSA by preferring dealers with both BMW and MINI brands at their dealerships over stand-alone MINI dealers such as Peterson Motorcars. (*Id.*, PageID # 948) The Court found this claim deficient because Plaintiffs had failed to identify any specific dealer that BMW favored over Peterson Motorcars.[1] (*Id.*, PageID # 948-49) On the date of that ruling, nine days remained before the February 28, 2020 deadline for motions to amend pleadings. (D.N. 51, PageID # 1167)

On April 29, 2020, after the amendment deadline had passed, Plaintiffs moved for leave to file a second amended complaint[2] to cure the deficiencies identified by the Court in its dismissal of Count V. (D.N. 48) Citing an Automotive News Article from March 2020, Plaintiffs identified

---

[1] Neither party had addressed this issue. (D.N. 43, PageID # 948)
[2] Plaintiffs previously amended their complaint in response to a show-cause order that identified deficiencies in the jurisdictional allegations. (D.N. 6)

a specific dealer that they alleged BMW had favored over Peterson Motorcars. (D.N. 48-1, PageID # 964-65) In support of their motion, Plaintiffs pointed to Rule 15's instruction that leave to amend should be freely granted. (D.N. 48-1, PageID # 967-69) BMW opposed the motion, asserting that leave should be denied because Plaintiffs did not have good cause for violating the scheduling order. (D.N. 50, PageID # 1151-57) In their reply, Plaintiffs argued that good cause exists to allow their belated request to amend because they could not correct the pleading deficiency identified by the Court in the nine days before the amendment deadline. (D.N. 51, PageID # 1166-70) Additionally, Plaintiffs assert that they could not comply with the deadline because they were unaware of the newly alleged facts until the March 2020 article, which came out after the February 28, 2020, deadline. (*Id.*)

Because BMW's motion (D.N. 33) would be moot if the Court granted Plaintiffs' motion (D.N. 48), the Court will address Plaintiffs' motion first.

## II.

### A.    Motion for leave to file second amended complaint by Plaintiffs

The Federal Rules of Civil Procedure contemplate a lenient standard of review when a party moves to amend a pleading. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (finding that leave should be "freely given" absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment"). But where a motion to amend a pleading comes after deadlines set in a Rule 16 scheduling order, the movant must show good cause why the Court should consider the untimely motion. Fed. R. Civ. P. 16(b)(4). "Once the scheduling order's deadline passes, a [movant] must first show good

3

cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (citing *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)). Good cause exists to modify a scheduling order only if the moving party shows that the deadline cannot be met despite the moving party's diligence. *Id.* at 906 (citing Fed. R. Civ. P. 16, 1983 advisory committee's notes); *see also Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014) (applying standard and finding no abuse of discretion in denial of motion for leave to amend filed after amendment deadline); *Marcilis v. Twp. of Redford*, 693 F.3d 589, 597 (6th Cir. 2012) (applying standard and finding no abuse of discretion in denial of motion to extend deadlines). Although not stated specifically in Rule 16, a court must also consider the potential prejudice to the nonmovant. *Leary*, 349 F.3d at 909. "But courts consider the extent of prejudice to the non-moving party only if the movant proceeded diligently, and then only to ascertain whether there exist 'additional reasons to deny a motion.'" *Smith v. Holston Medical Group, P.C.*, 595 F. App'x 474, 479 (6th Cir. 2014) (citation omitted); *see also Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010) (finding good-cause standard unmet even if there were no prejudice to opposing party where plaintiff did not "explain why he failed to move for the amendment at a time that would not have required a modification of the scheduling order").

The Court need not consider whether leave to amend is appropriate under Rule 15 because Plaintiffs have failed to satisfy Rule 16's good-cause standard. *See Leary*, 349 F.3d at 909. Since Plaintiffs did not move to extend the deadlines in the scheduling order and offered no adequate justification for this failure, they have not demonstrated that good cause exists to modify the scheduling order. *See Commonwealth Motorcycles, Inc. v. Ducati N. Am., Inc.*, Civil No. 3:16-cv-2-GFVT-EBA, 2017 WL 3586042, at *2 (E.D. Ky. Aug. 18, 2017) (denying leave to amend

complaint where a party failed, without justification, to request an extension of the deadline to file an amended complaint). Plaintiffs' main argument is that they could not have acted diligently to meet the deadline because the parties only became aware of the pleading deficiency after the Court's February 19, 2020 order, which was only nine days before the amendment deadline.[3] (D.N. 48-1, PageID # 1166-67) Even if the parties were unaware of the deficiency until the Court's February 19 ruling, the short time period between the order and the deadline does not mean that Plaintiffs could not have met the deadline. The parties were on notice of the deadline when the Court published its scheduling order on January 9, 2020. (D.N. 39, PageID # 938) Thus, at the time of the Court's order on February 19, 2020, Plaintiffs were aware that they had a deficient complaint and that the deadline to amend the deficient complaint was nine days later. (*Id.*; D.N. 43, PageID # 950) If nothing else, Plaintiffs could have filed a motion to extend the deadline in anticipation of trying to remedy the deficiency. *See Commonwealth Motorcycles*, 2017 WL 3586042, at *2 (denying leave to amend complaint where party failed to request an extension of the scheduling deadline to file an amended complaint without justification).

Plaintiffs assert that they could not have complied with the scheduling order because they first learned of BMW allowing a dealer to merge its BMW and MINI dealerships in a "March 2020 article," which was published after the expiration of the scheduling order. (D.N. 51, PageID # 1167; *see also* D.N. 48-2, PageID # 979-80) But as BMW correctly points out, the same news source that published the March 2020 article also published an article on June 29, 2019, about that same dealer merging BMW and MINI dealerships. (D.N. 50, PageID # 1152) Therefore, had

---

[3] Plaintiffs also argue that the Court should find good cause because of the COVID-19 pandemic. (D.N. 51, PageID # 1165) This argument is unavailing because Plaintiffs haven't given any specific reason why they were unable to file a motion due to the pandemic, and they haven't cited any authority suggesting deadlines set before the pandemic aren't enforceable. (*Id.*)

Plaintiffs acted diligently, they would have been aware of the newly alleged facts before the scheduling deadline. *See Ross*, 567 F. App'x at 306 (explaining that the Sixth Circuit has repeatedly found that a party "does not establish good cause to modify a case schedule to extend the deadline to amend the pleadings where [it] was aware of the facts underlying the proposed amendment to [its] pleading but failed, without explanation, to move to amend . . . before the deadline."). At the very least, had Plaintiffs acted diligently, they could have filed a motion to extend the deadline for amending the complaint to investigate and attempt to cure the deficiencies identified by the Court in its February 19, 2020, order.[4]

Plaintiffs further argue that BMW will suffer no prejudice because they are simply curing a deficiency in the complaint and are not adding new claims or parties. (D.N. 51, PageID # 1169) The Court only considers potential prejudice to the nonmovant, however, if the parties acted diligently. *Smith*, 595 F. App'x at 479 (citation omitted). Since Plaintiffs did not proceed diligently, the potential prejudice to BMW is not dispositive. *See id.; see also Leary*, 349 F.3d at 909 (finding that a court must also consider prejudice to the nonmovant if the movant satisfies "Rule 16's explicit 'good cause' requirement"). Instead, the Court concludes Plaintiffs have not demonstrated good cause under Rule 16(b) and therefore will deny the second motion for leave to amend the complaint (D.N. 48).

---

[4] Plaintiffs also argue that BMW has the names of specific dealers that have been treated more favorably than Peterson Motorcars but has not disclosed them in discovery. (D.N. 48-1, PageID # 968-69) To the extent this is true, this fact would not have prevented Plaintiffs from requesting an extension of the scheduling deadline. In fact, the parties have recently requested (D.N. 54), and the Court granted (D.N. 55), such a deadline extension with respect to the remaining discovery deadlines.

6

**B.     Motion for leave to file amended answer and counterclaim by defendant**

Plaintiffs oppose BMW's motion on the ground that the proposed counterclaim is futile. (D.N. 36, PageID # 902)  An amendment to assert a counterclaim is futile when it would not survive a Rule 12(b)(6) motion to dismiss. *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 355 (6th Cir. 2014) (citing *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)); *see South Fifth Towers, LLC v. Aspen Ins. UK, Ltd.*, No. 3:15-cv-151-CRS, 2016 WL 270459, at *6 (W.D. Ky. Jan. 21, 2016) (granting leave to amend where the proposed counterclaim was not futile).

In deciding a motion to dismiss under Rule 12(b)(6), the Court asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet the plausibility standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Factual allegations are essential; "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true. *Id.* A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss. *Id.* at 679.

In its counterclaim asserting abuse of process, BMW alleges that Plaintiffs followed through on a threat to sue BMW if it did not pay the remaining $3.1 million debt owed for construction of the MINI dealership. (D.N. 33-1, PageID # 882) "Generally stated, one who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which that process is not designed, is subject to liability to the other for harm caused by the abuse

7

of process." *Cherry v. Howie*, No. 5:14-cv-179-TBR, 2016 WL 3094712, at *5 (W.D. Ky. June 1, 2016) (quoting *Sprint Commc'ns Co., L.P. v. Leggett*, 307 S.W.3d 109, 113 (Ky. 2010)). "The essential elements of a claim for abuse of process are '(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding.'" *Id.* (quoting *Bonnie Braes Farms, Inc. v. Robinson*, 598 S.W.2d 765, 765 (Ky. Ct. App. 1980)). "Both elements must be present, as 'there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion even though with bad intentions.'" *Id.* (quoting *Simpson v. Laytart*, 962 S.W.2d 392, 395 (Ky. 1998)).

"The Kentucky Supreme Court has described an ulterior purpose as 'an objective which is not a legitimate use of process,' for example, 'to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property o[r] the payment of money.'" *Kinslow v. Fifth Third Bank, Inc.*, 529 F. App'x 467, 471 (6th Cir. 2013) (quoting *Sprint Commc'ns*, 307 S.W.3d at 114). An ulterior purpose exists when "the process is used as a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of process itself, which constitutes the tort." *Sprint Commc'ns*, 307 S.W. at 114 (quotation omitted).

Here, Plaintiffs argue that BMW fails to state a claim because payment of the debt owed for the MINI dealership is something they may recover in this action. (D.N. 36, PageID # 906) While Plaintiffs may end up obtaining a monetary judgment for their claims that would be sufficient to satisfy the debt, their amended complaint contains no allegation that BMW had a contractual obligation to pay the remaining debt owed for construction of the MINI dealership. (*See* D.N. 6, PageID 123-27) Even though Plaintiffs do not allege that BMW is contractually responsible for the debt, BMW asserts, they threatened this legal action if BMW did not agree to

8

pay the debt. (D.N. 33-1, PageID # 882)  From these allegations—which, at this stage, must be accepted as true—the Court can reasonably infer that Plaintiffs had an ulterior purpose for bringing this action. *Ashcroft*, 556 U.S. at 678; *Sprint Commc'ns*, 307 S.W.3d at 116.

In addition to an ulterior purpose, there must be a willful act of employing the legal process against another to achieve the ulterior purpose. *Sprint Commc'ns*, 307 S.W.3d at 118. This willful act can occur before "the issuance of the process." *Id.* "In the typical abuse of process claim, the plaintiff satisfies the willful act element by showing that the defendant directly bargained with him, using the wrongful process as leverage." *Sanders v. City of Pembroke*, No. 5:19-cv-23-TBR, 2020 WL 4572360, at *16 (W.D. Ky. Aug. 7, 2020) (citations omitted).  The willful-act requirement is satisfied where the plaintiff threatens legal action "in an attempt to achieve a result not authorized by law." *Cherry v. Howie*, No. 5:14-cv-179-TBR, 2017 WL 1146960, at * 4 (W.D. Ky. Mar. 27, 2017) (citing *Sprint Commc'ns*, 307 S.W.3d at 119)  Here, BMW alleges that Plaintiffs threatened to sue if it refused to pay the remaining debt owed for the MINI dealership. (D.N. 33-1, PageID # 882).  Accepted as true, as is required at this stage, this allegation allows the Court to reasonably infer that Plaintiffs committed a willful act to achieve the alleged ulterior purpose. *See Ashcroft*, 556 U.S. at 678.  Therefore, BMW has asserted a plausible claim of abuse of process. *Id.*  Since BMW's counterclaim would survive a Rule 12(b)(6) motion to dismiss, the proposed amendment is not futile. *See SFS Check*, 774 F.3d at 355 (citation omitted).

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Plaintiffs' motion for leave to file a second amended complaint (D.N. 48) is **DENIED**.

(2) Defendant's motion for leave to file an amended answer and counterclaim (D.N. 33) is **GRANTED**. The Clerk of Court is **DIRECTED** to file the tendered amended answer and counterclaim (D.N. 33-1) in the record.